# Order

Michigan Supreme Court
Lansing, Michigan

June 8, 2007

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

128913

NORMA R. BIERLEIN, Next Friend of
SAMANTHA C. BIERLEIN, a Minor, and
KIRT BIERLEIN, Conservator for
SAMANTHA C. BIERLEIN, a Minor,
       Plaintiffs-Appellants,

v

MARK SCHNEIDER and MARY SCHNEIDER,
       Defendants-Appellees.

SC: 128913
COA: 259519
Saginaw CC: 96-013292-NI

_____/

On order of the Court, leave to appeal having been granted and the briefs and oral arguments of the parties having been considered by the Court, we VACATE our order of April 14, 2006. The application for leave to appeal the May 12, 2005 order of the Court of Appeals is DENIED, because we are no longer persuaded that the question presented should be reviewed by this Court.

MARKMAN, J., concurs and states as follows:

I concur in the Court's order in this very tragic case. At issue are the proceeds of a settlement on behalf of plaintiff, a minor child, stolen by the child's attorney. I agree with the dissent that an injustice has been done here, but from the outset of this case there was never any question that an injustice would be done, only a question of to whom it would be done. Settlement proceeds cannot be stolen and dissipated by a corrupt attorney without some injustice resulting, either to the party deprived of the proceeds or to the party required to pay the proceeds a second time.

In the end, however, the critical fact is that the injustice here was perpetrated by *plaintiff's* attorney. Moreover, before approving the settlement, the trial court asked *plaintiff's* attorney whether a conservator had been appointed and he responded that one would be appointed "shortly," and on the basis of this representation, the settlement was paid jointly to *plaintiff's* attorney and *plaintiff's* mother as next friend.

The court rule cited by the dissent, MCR 2.420(B), requires that "a conservator must be appointed by the probate court *before* the entry of the judgment or dismissal." MCR 2.420(B)(4)(a). As acknowledged by plaintiff's appellate counsel at oral argument, this rule is directed not at defendants, but at the *trial court*, which erred in allowing disbursement of the settlement in the absence of a conservator. Justice Weaver is wrong to assert that the court rule imposes a duty on *defendant* to ensure that a conservator be appointed. Unless the dissent is prepared to modify the judicial immunity rule by which judges are immune from liability for erroneous actions taken in their official capacity, plaintiff has no recourse against the one person in this case who was ultimately responsible for ensuring the appointment of a conservator. If plaintiff believed that the judgment was invalid for failure to follow the court rule, *plaintiff* should have appealed the trial court's decision. Plaintiff never did so and now seeks belatedly to challenge it on collateral grounds. It is not *defendant's* obligation to preserve issues on *plaintiff's* behalf.

Moreover, even if the trial court *had* appointed a conservator, it is clear that it would not have altered the results here. Plaintiff's mother testified that she and her husband agreed that she would be appointed conservator. Thus, even *if* plaintiff's mother had been appointed conservator, there is no indication that the settlement check would have been issued to anyone other than the mother and her attorney, or that anything at all would have been different in the management of the account. The record indicates that plaintiff's mother was utterly uninvolved in the investment of the proceeds, to the point where she did not even *discover* that her attorney had stolen these proceeds until nearly four years after the court authorized a distribution of the proceeds. During this time, she completely relied on her attorney's personal management of this account. Thus, even if plaintiff's mother had been appointed as conservator, her attorney would have maintained control over the proceeds and would have been in a position to steal those proceeds.

Again, this is a very tragic case and one is moved by natural sympathy to try and find a way for plaintiff to recover the money that was stolen from her. Cf. *DeShaney v Winnebago Co Dep't of Social Services*, 489 US 189, 202-203 (1989).[1] But before yielding to that impulse, it is well to remember once again that the harm was inflicted not by defendants, but by plaintiff's own attorney. Defendants should not be required to pay a second settlement; they did not do anything wrong in paying the original settlement. Rather, the proper source of relief for plaintiff must be her former attorney (who is now incarcerated and apparently judgment-proof) and the Client Protection Fund of the state bar. Plaintiff's counsel noted at oral argument that it had already received $10,221 from

---

[1] "Judges and lawyers, like other humans, are moved by natural sympathy in a case like this to find a way for Joshua and his mother to receive adequate compensation for the grievous harm inflicted upon them. But before yielding to that impulse, it is well to remember once again that the harm was inflicted not by the State of Wisconsin, but by Joshua's father." *Id*.

the fund, but that the fund had already paid the $200,000 maximum reimbursement for losses resulting from the dishonesty of her lawyer. However, Rule 12(E) of the Client Protection Fund Rules states:

> The [State Bar of Michigan] Board of Commissioners may approve payment of a claim at an amount that exceeds the maximum limits where the totality of the circumstances, in light of the purposes and policies of the Fund, warrants doing so.

It is hard to imagine a case in which the "purposes and policies" of the fund — to compensate persons victimized by the wrongdoing of their attorneys — would be more significantly furthered, and on behalf of a more deserving beneficiary, than by the application of Rule 12(E) in the instant case. I respectfully urge the fund to give consideration to whether application of this rule is warranted in this case. I also urge this Court to promptly review its policies in order to ensure more adequate funding for the Client Protection Fund.[2]

CORRIGAN, J., joins the statement of MARKMAN, J.

CAVANAGH, J., dissents and states as follows:

I respectfully disagree with the majority that we improvidently granted leave to appeal. This case involves a settlement reached on behalf of a minor child that was

---

[2] In order to facilitate the fund's ability to either increase the overall caps or to exceed the caps under Rule 12(E), this Court has already opened an administrative file, ADM 2007-19, to consider adding the Client Protection Fund as a recipient of Interest on Lawyers Trust Accounts (IOLTA) funds. Under Administration Order No. 1997-9, this Court has allocated ten percent of IOLTA proceeds to the State Court Administrative Office (SCAO) to implement the recommendations of the task forces on gender issues and racial/ethnic issues in the courts. Because of recent changes in how IOLTA accounts are invested, SCAO received an allocation of $324,402 to implement the recommendations of the task force. At the moment, however, the only planned expenditure out of this fund amounts to approximately $75,000. Given the marked increase in revenue generated by IOLTA accounts, the proposal before this Court would reduce allocation for task force implementation to five percent and would allocate the remaining five percent to the Client Protection Fund. Such an allocation would substantially increase the fund's annual receipts. Currently, the fund is supported by a direct annual assessment on members of the bar and by unspent judicial campaign funds. According to the state bar, the fund receives approximately $550,000 a year and has paid out claims totaling $252,000 over the past three years. The fund could use the additional proceeds generated from IOLTA's earnings to either increase the per-lawyer cap on payments or to more easily exceed the cap in appropriate circumstances.

approved before a conservator had been appointed or a bond was posted, in violation of MCR 2.420(B). Because this Court has the inherent authority to enforce its own rules, I would address the merits of this case. All parties to a proceeding are responsible for following the court rules. MCR 2.420(B) does not merely safeguard minor plaintiffs; it also protects defendants from liability to minor plaintiffs. If defendants pay settlements to someone other than a conservator, or pay when there has been no conservator appointed, they do so at their own peril. Thus, I would reverse the decision of the Court of Appeals, reopen the settlement, and set aside the order of dismissal pursuant to this Court's authority under MCR 7.316(A)(7).

KELLY, J., joins the statement of CAVANAGH, J.

WEAVER, J., dissents and states as follows:

I agree with and join Justice Cavanagh's dissent from the majority's decision to deny leave to appeal in this case. The majority refuses to correct the injustice done in this case despite having the power to do so under MCR 2.612(C)(1)(f).

This Court has created rules carefully crafted to protect minors and incompetent persons who receive a settlement in a lawsuit. When a minor child is to receive a settlement in a lawsuit, a conservator must be appointed by the probate court before the case may be dismissed.[3] Further, the trial court must receive written verification from the probate court that a sufficient bond has been posted by the conservator before the case may be dismissed.[4]

---

[3] MCR 2.420(B)(4)(a) provides:

> If the settlement or judgment requires payment of more than $5,000 to the minor either immediately, or if the settlement or judgment is payable in installments in any single year during minority, a conservator must be appointed by the probate court before the entry of the judgment or dismissal.

[4] MCR 2.420(B)(3) provides:

> If a next friend, guardian, or conservator for the minor or legally incapacitated individual has been appointed by a probate court, the terms of the proposed settlement or judgment may be approved by the court in which the action is pending upon a finding that the payment arrangement is in the best interests of the minor or legally incapacitated individual, but no judgment or dismissal may enter until the court receives written verification from the probate court that it has passed on the sufficiency of the bond and the bond, if any, has been filed with the probate court.

But in this case the trial court failed to follow the Michigan Court Rules. No conservator was appointed for the minor child and no bond was posted before the trial court approved the settlement and dismissed the case. Moreover, although defendant was aware that no conservator had been appointed and no bond had been posted, it nevertheless paid the minor child's settlement in a check made out to the child's mother and attorney. The attorney embezzled this money.

The child's newly appointed conservator now seeks to have this Court enforce its own court rules and hold that the case was improperly dismissed under MCR 2.420(B)(3) and (4)(a). But, after receiving three sets of briefs and twice hearing oral arguments in this case, the majority now dismisses the appeal without correcting the injustice done in this case, refusing to exercise its authority under MCR 2.612(C)(1)(f) to enforce its own court rules, and leaving the one individual, the injured, innocent child, who was supposed to be protected by the court rules with no remedy.

I

When Samantha Bierlein was two years old she suffered a traumatic brain injury in a car accident. Through her mother and next friend, Mrs. Norma R. Bierlein, Samantha filed suit in the Saginaw Circuit Court. Mrs. Bierlein reached a settlement agreement with defendant for $55,000. The trial court approved the settlement at a July 1997 hearing. When the trial court asked if a conservator had been appointed by the probate court, plaintiff's attorney, Patrick Collison, said that "[t]here will be one very shortly." Defendant's attorney presented the order approving the settlement, which had been drawn up by defendant's attorney. The court approved the settlement, despite having been informed that no conservator had been appointed, and dismissed the case.

The trial court erred in approving the settlement for a minor child when no conservator had been appointed for that child. The Michigan Court Rules specifically require that when a minor child is receiving a settlement, "a conservator must be appointed by the probate court before the entry of the judgment or dismissal." MCR 2.420(B)(4)(a). Further, no judgment or dismissal may enter "until the court receives written verification from the probate court that it has passed on the sufficiency of the bond and the bond, if any, has been filed with the probate court." MCR 2.420(B)(3).

Defendant, who was aware that no conservator had been appointed and that no bond had been approved by the probate court, made the settlement check out to Mrs. Bierlein, as next friend, and Samantha's attorney, Mr. Collison. Mr. Collison assured Mrs. Bierlein that the settlement money was placed in a high-interest-bearing account.

In April 2001 Mrs. Bierlein brought to the attention of the circuit court that she had unsuccessfully attempted to contact Mr. Collison several times, requesting copies of documents showing where and how the settlement funds had been invested. Mr. Collison

lied about the status of the settlement funds, and after three show-cause hearings, it was discovered that Mr. Collison had embezzled and converted the settlement funds.[5]

On October 17, 2001, Kirt Bierlein, Samantha's father, was appointed her conservator, and added as a party plaintiff. Mr. Bierlein filed a motion to reopen the proceedings and reevaluate the settlement, which was granted on June 21, 2002, by Judge Fred L. Borchard, the previous circuit judge's successor with regard to the case. Defendant appealed from that order by leave granted by the Court of Appeals, which held that the trial court had erred in setting aside the settlement and remanded the case to the trial court. On remand, Judge Borchard's successor, Judge Lynda L. Heathscott, denied plaintiff's motion to enforce the settlement and reinstated dismissal of the case. Plaintiff applied for leave to appeal from the dismissal order, which the Court of Appeals denied on May 12, 2005.

Plaintiff then sought relief in this Court. In December 2005 this Court ordered oral argument on whether to grant the application for leave to appeal, asking the parties to address

> whether, when no conservator had been appointed, and no bond had been approved or filed with the probate court, (1) the circuit court had subject matter jurisdiction to approve the settlement and enter an order of dismissal; or (2) any other reason justifying relief from the operation of the judgment in this case exists; or (3) as a prophylactic measure, in the exercise of this Court's inherent power to enforce its own rules pursuant to MCR 7.316(A)(7), the dismissal in this case ought to be set aside and the settlement reopened. [474 Mich 989 (2005).]

Following oral argument on the application for leave to appeal, this Court granted leave to appeal pursuant to MCR 7.302(G)(1). 474 Mich 1112 (2006).

Now, after two rounds of oral arguments and three sets of briefing, the majority has decided that it is "no longer persuaded the questions presented should be reviewed by this Court," and has dismissed the appeal, refusing to enforce its own court rules to grant relief to the innocent child, when the Court, under its own rules, has the authority to do so.

II

This Court has the authority to grant the relief that plaintiff seeks. MCR 2.612(C)(1)(f) provides that a court may relieve a party or the legal representative of a

---

[5] Mr. Collison is now in jail, apparently having embezzled money from 27 other clients. Mr. Collison is essentially judgment-proof. The maximum available under the Client Protection Fund had been reached, and Mr. Collison had no legal malpractice insurance.

party from a final judgment, order, or proceeding on the basis of "[a]ny other reason justifying relief from the operation of the judgment." In order for relief to be granted under this subsection, three requirements must be fulfilled: (1) the reason for setting aside the judgment must not fall under MCR 2.612(C)(1)(a) through (e); (2) the substantial rights of the opposing party must not be detrimentally affected if the judgment is set aside; and (3) extraordinary circumstances must exist that mandate setting aside the judgment in order to achieve justice. *Altman v Nelson,* 197 Mich App 467, 478 (1992). This unusual and tragic case satisfies all three requirements.

Defendant conceded that the reasons for setting aside the judgment do not fall under any of the five grounds for relief listed in MCR 2.612(C)(1)(a) through (e). However, defendant argues that its substantial rights would be affected if the settlement is set aside, because it already paid the settlement once. This argument is unpersuasive. Defendant paid the settlement, knowing that no conservator had been appointed for Samantha and no bond had been posted, despite the court rules prohibiting dismissal of the case without those things occurring. Defendant knew the case was improperly dismissed and, therefore, had no reasonable expectation that the settlement would stand.

The concurrence asserts that, "from the outset there was never any question that an injustice would be done" in this case.

I disagree.

The party that is supposedly being asked to pay the proceeds a "second time" was represented by capable counsel, who was retained by an insurer charged with protecting that party's interests. Defense counsel was explicitly informed, at the settlement hearing, when the trial court inquired and was informed by plaintiff's counsel that no conservator had been appointed, that the protections built into MCR 2.420(B) were not yet in place. Therefore, defendant, defendant's counsel, and defendant's insurer knew that the settlement proceeds intended for the benefit of the minor plaintiff were being turned over to plaintiff's attorney *before* securing what defendant was bargaining for — dismissal of the action with prejudice in compliance with the rule governing settlements with minors — contrary to the explicit requirements of MCR 2.420(B).

I certainly do not argue that defendants had a *duty to plaintiff* "to make sure that plaintiff's attorney conducted himself in a particular fashion." On the contrary, defendant, defense counsel, and defendant's insurer all owed it to *themselves* to ensure that plaintiff's counsel secured appointment of a conservator: Only by doing so could they properly secure dismissal with prejudice of the action against defendant, and thereby extinguish defendant's liability to a minor plaintiff through a court-approved settlement.

*Friedman v Dozorc* 412 Mich 1 (1981), is simply inapposite here. The suggestion that holding defendant, defense counsel, and defendant's insurer accountable for *failing*

*to look out for their own interests* by insisting on strict compliance with the court rule designed not only for their protection, but for the protection of minor plaintiffs, is somehow inconsistent with the principles of an adversarial legal system reflects a fundamental failure to grasp the rather simple workings of that rule, and what happened here.

It is unjust to suggest that the "solution" is to quell our "natural sympathy" for the minor plaintiff and instead hope for some discretionary largesse from the Client Protection Fund. Had defendant, defense counsel, and defendant's insurer looked out for *their own interests* by insisting on compliance with MCR 2.420(B) before handing over a check payable to defense counsel, instead of to the minor plaintiff's (unappointed) conservator, as the rule requires, and as counsel for the Auto Club Insurance Association correctly did in *In re Contempt of Auto Club Insurance Ass'n*, 243 Mich App 697 (2000), plaintiff's corrupt attorney could not have converted the settlement. More importantly, had they followed the rule's dictates, and insisted on compliance with them, thereby ensuring that the "probate court has passed on the sufficiency of the bond of the conservator," there would be a remedy, one that would insulate them from the risk that the funds would be misappropriated, and that they might be required to pay the settlement amount again, this time in accordance with the rule they ignored. In short, there likely would be a source of recovery for plaintiff, which would have protected not only plaintiff, but defendant, defense counsel, and defendant's insurer, as well.

Defendant is not being asked to pay plaintiff a "second time." Defendant has never paid plaintiff *in accordance with our rule*, which required "that payment be made payable to the minor's conservator on behalf of the minor." MCR 2.420(B)(4)(a). We know this, because, as defense counsel was informed at the settlement hearing, no conservator ever was appointed.

III

It is tragic that a majority of four that proudly professes a commitment to enforcing statutes and rules as written, in accordance with their plain meaning, claims itself to be so helpless in this instance. Just what is it about "a conservator *must* be appointed by the probate court *before* entry of the judgment or dismissal," or "the judgment or dismissal *must require* that payment be made payable to the minor's conservator on behalf of the minor," or "[t]he court *shall not* enter the judgment or dismissal *until* the court receives written verification … that the probate court has passed on *the sufficiency of the bond of the conservator*" that this self-proclaimed textualist Court cannot comprehend or enforce?

Our rules have a structure, a meaning, and a purpose that is evident when the rules are examined. The purpose of MCR 2.420(B)(4)(a) — protecting minor plaintiffs, in this case a brain-injured plaintiff — could not be plainer. The concurrence bemoans the supposed choice that confronts the Court if it enforces our rule: On one hand, it would have to visit a "tragic" injustice on a defense insurer that failed to comply with a court rule that is designed to protect its interests and those of its insured by making it possible to settle with a minor plaintiff. Its interests, and those of its insured could have been safeguarded by simply abiding by the rule and paying the settlement *with a check made payable to the child's duly appointed conservator*, as the rule required. In fact, the defense has never paid the settlement in this case *in accordance with our rule*, and therefore is not being asked to pay a "second time." It has not yet paid *for the first time*.

Instead, the majority chooses to visit the "tragic" injustice on the minor child, who suffered betrayal first at the hands of the attorney charged with protecting her interests; then at the hands of the defense and the trial court, which failed to follow our rule, despite being explicitly informed that it had been ignored; and now at the hands of this Court, which today refuses to enforce its own plainly worded rule. Our duty is clear. Just as clearly, the majority has abdicated that duty in favor of the insurer.

Rather than dismiss this appeal, this Court should exercise its authority under MCR 2.612(C)(1)(f) to enforce its own court rules that were designed to protect the minor child, and grant Samantha the relief requested. This Court should hold that a defendant who pays a settlement in excess of $5,000 to a minor child, knowing that, in violation of the Michigan Court Rules, no conservator has been appointed and no bond has been posted, does so at its own risk.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

June 8, 2007

Clerk

t0530